SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**ROBERT S. TRISOTTO, NYB #4784203**
Assistant United States Attorney
Robert.Trisotto@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **3:24-cr-291-SI-1-2** |
| **v.** | **UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANTS CHRISTENSEN AND MATIC** |
| **ROBERT D. CHRISTENSEN, and ANTHONY M. MATIC,** | |
| **Defendants.** | |

## I.    INTRODUCTION

Defendants Robert Christensen and Anthony Matic raised over $10 million dollars from investors by promising above-market interest rates of between 8% and 15%, lump sum payouts, and full repayment within just a few weeks or months.  Based upon business pitches from Christensen and Matic, investors believed their money was being used to buy residential real estate properties primarily in the Midwest.  They misled investors into believing they would use their money to purchase undervalued properties, make improvements to them, and then refinance

**United States' Sentencing Memorandum**                                                    **Page 1**

the properties to extract the appreciated value.  Investors would then be repaid with the proceeds from the refinancing.

In truth, however, Christensen and Matic deceived investors.  Their business plan proved unworkable in the early stages, and they knew they could not repay investors the promised returns within the designated timeframes.  Yet, Christensen and Matic continued to raise money through investors by misrepresenting the money would be used for real estate investments when, in fact, Christensen and Matic intended to use the money to repay other investors and to pay themselves significant sums and disbursements.

They not only cheated investors.  They also deceived commercial lenders.  Christensen and Matic obtained more than $7 million dollars from commercial lenders by making false statements in the loan applications and submitting false tax documentation.  Because of these false statements and half-truths, victims of their scheme have lost millions of dollars in investments, retirement and other savings.

On May 15, 2025, Christensen pled guilty to two counts of conspiracy to commit wire fraud (one for defrauding investors and one for defrauding commercial lenders), in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1957.  Two months earlier, on about March 11, 2025, Matic had also pled guilty to the two conspiracy counts.  Sentencing for both defendants is set for April 30, 2026.

After considering the sentencing factors under 18 U.S.C. § 3553(a), the United States believes that the Court should impose the following sentences:

**United States' Sentencing Memorandum** **Page 2**

**Christensen**:  A 51-month term of imprisonment on each count, run concurrently, 3 years' supervised release, no fine, restitution in an amount to be determined, and a $100 special assessment per count.

**Matic**:  A 24-month term of imprisonment on each count, run concurrently, 3 years' supervised release, no fine, restitution in an amount to be determined, and a $100 special assessment per count.

The United States believes these respective sentences satisfy the goals of sentencing by fairly balancing the nature, circumstances, and seriousness of the offense with defendants' history and characteristics, their respective roles in this case, other considerations before the Court, and the need to protect the public, provide deterrence, and promote respect for the law.

## II.    THE CONSPIRACY TO COMMIT WIRE FRAUD

Beginning in 2018, Christensen and Matic began operating a residential real estate business where they purported to use investor money to buy single family and multi-family residential properties in the Midwest (like Ohio, Indiana, and Pennsylvania), renovate those properties, and then (1) rent them out to generate rental income, and (2) refinance them to generate loan proceeds that extracted the increased value from the improvements and could be used to pay back investors.  (RC PSR ¶ 27; AM PSR ¶ 25.)

To raise money, Christensen and Matic offered investors interest rates as high as 8% to 15%, lump sum payouts, and repayment within periods as short as 30 to 90 days.  (RC PSR ¶ 29; AM PSR ¶ 27.)  Christensen and Matic, primarily through the businesses Foresee and Commission PDX, signed promissory notes that outlined the terms of the loan and represented that the loan proceeds would be used "exclusively for commercial or business purposes."  (RC

**United States' Sentencing Memorandum**                                                     **Page 3**

PSR ¶ 33; AM PSR ¶ 31.)  To extract even larger investments, Christensen convinced investors to take out home equity lines of credit (HELOC) on their primary homes and to withdraw their retirement savings early.  (RC PSR ¶ 34.)

In truth, Christensen and Matic knew by no later than 2019 that their business model was failing and that they did not have the ability to repay investors.  (RC PSR ¶ 26; AM PSR ¶ 24.)  Despite repeated efforts, they could not successfully refinance the properties they purchased, let alone do so within the short time frames promised to investors.  (RC PSR ¶ 30; AM PSR ¶ 28.)  Consequently, from the start, they were cash strapped and falling behind on their note obligations.  (RC PSR ¶ 31; AM PSR ¶ 29.)  They often had little or no cash in their bank accounts and the properties they did own were not generating enough cash flow to repay investors.  But rather than disclose this to investors, Christensen and Matic continued to solicit more investments by giving the false appearance that its business model was successful.  (*Id.*)

When notes became due, Christensen and Matic would try to convince investors to roll over their investment into a new opportunity.  (RC PSR ¶ 35; AM PSR ¶ 33.)  They would also try to lull investors along by telling investors that they were continuing to earn a large amount of interest and, to that end, provided monthly accounting statements showing the large amounts of earned interest.  (*Id.*)  In the instances where Christensen and Matic could not convince an investor to roll over their investment or the investor said they were in dire need of their money back, the source of those payments was generally new investor money.  (RC PSR ¶ 31; AM PSR ¶ 29.)

Desperate for cash by 2021, Christensen and Matic began engaging in an additional scheme to defraud commercial lenders.  Specifically, Christensen and Matic applied for loans

**United States' Sentencing Memorandum**                                    **Page 4**

from commercial lenders and, to obtain those loans, misrepresented their total outstanding liabilities by failing to disclose the millions of dollars owed to investors and submitting fraudulent tax documents. (RC PSR ¶ 116; AM PSR ¶ 114.)

Christensen and Matic also took steps to cover up their fraud.  For example, recognizing they could not repay investors what they owed them in the short term, they shifted to a long-term scheme by creating the CPDX equity fund.  (RC PSR ¶ 36; AM PSR ¶ 34.)  According to the Private Placement Memorandum, the objective of the fund was to (1) acquire properties, (2) renovate and stabilize them, and then (3) hold them for long-term appreciation and/or cash flow purposes.  It stated:  "we intend to hold such Properties for the next 3 to 5 years until they can be disposed of at a profit due to anticipated increases in the value of the Properties due to our renovations and rehabilitations and/or general market demand."  Significantly, in doing so, Christensen and Matic never disclosed to investors that the properties that were placed into the fund were collateral for a loan obtained from a commercial lender.  In short, the CPDX equity fund was a deliberate effort to prevent victims from learning that they had been defrauded.

Moreover, after the U.S. Securities and Exchange Commission ("SEC") began investigating defendants for violating federal securities laws, Christensen and Matic lied to investors about the purpose of the investigation, claiming it was just an "audit", that the SEC "froze" their properties pending the audit, and victims would be fully repaid after the audit ended.  (RC PSR ¶ 121; AM PSR ¶ 118.)  Victims learned the truth only after the SEC investigation was made public.  (*Id.*)

Because of their fraudulent scheme, dozens of investors were defrauded out of more than $10 million, and commercial lenders were defrauded out of another $7 million.

**United States' Sentencing Memorandum**                                        **Page 5**

### III.    THE PRESENTENCE REPORT

On April 13 and 14, 2026, Probation disclosed the PSRs to the parties and issued its

Sentencing Recommendations.

### A.    Defendants' Total Offense Levels

In the PSR, Probation concluded that Christensen's total offense level is 33 and Matic's

total offense level is 28:

**Christensen**

After grouping the three counts of conviction, Probation calculated Christensen's offense

level as follows

| Description | No. | Guideline Section |
|---|---|---|
| Base Offense Level | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss < $9.5 Million | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| Substantial Financial Hardship | +4 | U.S.S.G. § 2B1.1(b)(2)(B) |
| Sophisticated Means | +2 | U.S.S.G. § 2B1.1(b)(10)(C) |
| $1 million Gross Receipts from Financial Institutions | +2 | U.S.S.G. § 2B1.1(b)(17)(A) |
| Convicted under Sect. 1957 | +1 | U.S.S.G. § 2S1.1(b)(2)(A) |
| Abused position of private trust | +2 | U.S.S.G. § 3B1.3 |
| Acceptance | -3 | U.S.S.G. § 3E1.1 |
| **Total:** | **33** | |

(RC PSR ¶¶ 137-150.)

///

///

**Matic**

After grouping the two counts of conviction, Probation calculated Matic's offense level as follows

| Description | No. | Guideline Section |
|---|---|---|
| Base Offense Level | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss < $9.5 Million | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| Substantial Financial Hardship | +4 | U.S.S.G. § 2B1.1(b)(2)(B) |
| Sophisticated Means | +2 | U.S.S.G. § 2B1.1(b)(10)(C) |
| $1 million Gross Receipts from Financial Institutions | +2 | U.S.S.G. § 2B1.1(b)(17)(A) |
| Minor Role | -2 | U.S.S.G. § 3B1.2(b) |
| Acceptance | -3 | U.S.S.G. § 3E1.1 |
| **Total:** | **28** | |

(AM PSR ¶¶ 133-146.)

### B.    Defendants are in Criminal History Category I

The PSR concluded that both Christensen and Matic are in Criminal History Category I. (RC PSR ¶ 154; AM PSR ¶ 150.)

### C.    Probations Recommended Terms of Imprisonment

**Christensen.**  With a total offense level of 33 and a criminal history category of I, Probation determined that Christensen falls within an advisory Guidelines range of 135 to 168 months' imprisonment.  (RC PSR ¶ 194.)  Probation recommended a below-Guidelines range sentence of 78 months' imprisonment on each count, run concurrently, a 3-year period of

supervised release, no fine, a $100 special assessment on each count, and restitution in an amount to be determined.  (RC Rec. at 1.)

**Matic.**  With a total offense level of 28 and a criminal history category of I, Probation determined that Matic falls within an advisory Guidelines range of 78 to 97 months' imprisonment.  (RC PSR ¶ 194.)  Probation recommended a below-Guidelines range sentence of 51 months' imprisonment on each count, run concurrently, a 3-year period of supervised release, no fine, a $100 special assessment on each count, and restitution in an amount to be determined. (AM Rec. at 1.)

## IV.    THE UNITED STATES' POSITION ON THE PRESENTENCE REPORT

The United States adopts the Guideline calculations and criminal history computation set forth in the PSRs, with two exceptions.  Based on the parties' plea agreements in this case, the United States does not seek the two-level enhancement for sophisticated means under Section 2B1.1(b)(10)(C) for either Christensen or Matic, or the two-level enhancement under Section 3B1.3 for Christensen.  Both should be given the benefit of their bargain in the plea agreement in which the parties did not stipulate to those enhancements applying.

After accounting for those differences, the United States believes Christensen has a total offense level of 29 and a criminal history category of I, falling within an advisory Guidelines range of 87 to 108 months' imprisonment.  And Matic has a total offense level of 26 and a criminal history category I, falling within an advisory Guidelines range of 63 to 78 months' imprisonment.

///

**United States' Sentencing Memorandum**                                                              **Page 8**

V.      **THE UNITED STATES' RECOMMENDED SENTENCE AND SECTION 3553(a)
        ANALYSIS**

The United States respectfully requests that the Court sentence Christensen to a below-Guideline term of imprisonment of 51 months on each count, run concurrently, 3 years' supervised release, no fine, and a $100 special assessment per count, and sentence Matic to below-Guideline term of imprisonment of 24-months on each count, run concurrently, 3 years' supervised release, no fine, and a $100 special assessment per count.

For the reasons discussed below, the United States believes these sentences satisfy the goals of sentencing.

A.      **Nature, Circumstances, and Seriousness of the Offense**

The nature, circumstances, and seriousness of Christensen's and Matic's fraudulent scheme support the recommended sentences. After receiving new investments from victims, Christensen and Matic did not use the investment proceeds for the purposes they represented. Instead, they immediately turned around and used that money to pay off other investors and make personal disbursements to themselves. This started early on. For example, before April 2020, the Commission PDX only acquired four properties for a total of about $1.2 million even though records show they took in more than $6 million from investors by that point. And even though Christensen and Matic knew their "business plan" was not workable by this early point in time, they kept taking investor money and devising additional schemes to avoid detection.

Accordingly, the nature, circumstances, and seriousness of the offenses warrant a significant sentence consistent with the United States' recommendations.

**United States' Sentencing Memorandum**                                    **Page 9**

### B.    The Level of Emotional and Financial Hardship Caused to Victims

Christensen and Matic caused their victims an immeasurable amount of financial and personal hardship that should be considered in fashioning an appropriate sentence.  As stated in *United States v. Nathanson*, "[r]ecognition of the victims and their injuries is integral to understanding the broader context of the crime and in determining the seriousness of the offense and what is just punishment in a specific case."  948 F. Supp. 2d 1055, 1064–65 (C.D. Cal. 2013), *aff'd*, 585 Fed. App'x 615 (9th Cir. 2014); *see United States v. Rangel*, 697 F.3d 795, 799-800 (9th Cir. 2012) (district court properly considered the "serious and lasting impact" of defendant's scheme on victims, "including the loss of their homes, college funds, and retirement savings, and substantial emotional turmoil," in imposing a sentence).

Here, the harm articulated by victims in their victim impact statements is significant:

**Victims M.M. and S.M.**  Victims M.M. and S.M. described the "devastating impact on [their] financial, emotional, and daily well-being" Christensen caused them after he convinced them to take out two HELOCs on their primary home.  He did this by deceiving them into believing the HELOCs would be quickly paid off from the return on their investments, and they would profit by the spread on the difference between the high interest rate on the note versus the low interest rate (at that time) on the HELOC.  Consequently, they lost over $250,000 paid into the investment and another $50,000 on interest on the HELOCs, which continues to be paid today.  Because of Christensen, these victims will "never be able to retire" and both "experienced intense feelings of betrayal from someone who acted as if they were [their] friend." (Victims M.M. and S.M. Impact Statement.)

**United States' Sentencing Memorandum**                                                          **Page 10**

**Victims C.S. and R.S.**  Christensen defrauded other victims into taking out HELOCs, such as Victims C.S. and R.S.  Because of him, they live in "fear of [their] financial future" every day and have a mortgage that is "double" what it was.  This has restricted their activities in retirement to a very tight budget, "destroyed" any dreams of travel, and harmed their relationships by not being able to afford to participate in activities and events.  (Victims C.S. and R.S. Impact Statement.)

**Victims B.B. and S.B.**  Consider also, Victims B.B. and S.B. who Christensen caused "immense emotional distress" and "financially devastating" consequences by convincing them to take out a HELOC to invest with him.  They have "countless sleepless nights, worrying about losing [their] home and [their] financial security."  These were not just financial crimes.  They were "deeply personal" because Christesen "pr[e]yed on our trust, exploiting our desires to provide for our families and secure our futures.  Their actions have left a lasting impact on our lives, causing irreparable harm to our financial stability and emotional well-being."  (Victims C.S. and R.S. Impact Statement.)

**Victim D.P.**  Victim D.P. also described the "ongoing nightmare" Christensen has caused her after Christensen took advantage of his friendship with Victim D.P. to defraud her out of the $50,000 she had put away for an emergency.  When Victim D.P. was in a time of mourning after losing her husband, Christensen called her up to "help" her by investing a note for a home for a year so that he could double her money.  She was never paid back and with her "life savings stripped" on top of the loss of her husband, she has "countless sleepless nights these past years, depression and anxiety."  (Victim D.P. Impact Statement.)

**United States' Sentencing Memorandum**                                                    **Page 11**

**Victim I.Z.**  Victim I.Z. described how the "high level of trust placed in Mr. Matic based on [their] personal relationship" defrauded him out of "over half" of his net worth.  When the truth was revealed to Victim I.Z., he "was paralyzed emotionally by the shock of the investment loss."  This has led to hardship across his life, from harming his family relationships, to living in financial uncertainty, to losing self-confidence, and to being unable to trust people.  (Victim I.Z. Impact Statement.)

This harm to victims supports the United States' recommended sentence because victims are haunted every day by the emotional and financial trauma defendants inflicted on them by being cheated out of large sums of money and, in some cases, being betrayed by defendants who they trusted.

### C.    Defendants' History and Characteristics

While the harm to the victims is quite aggravating, there is significant mitigating information based upon defendants' history and characteristics.

First, both Christensen's and Matic's post-indictment conduct is mitigating as they have both undertaken significant efforts to assist in recovering their losses, including waiving attorney client privilege and confidentiality related to defendants' businesses' files and communications maintained by their businesses' counsel, voluntarily speaking with civil counsel who represents certain victims in a civil action filed against them, among other things.  The United States believes this supports a four-level downward variance to each defendant's respective advisory guideline range.

Second, the United States believes Christensen should receive an additional one-level downward variance to offset the one-level enhancement he received to his Guideline range for

**United States' Sentencing Memorandum**                                                              **Page 12**

pleading to money laundering.  The heart of this case was the conspiracy to defraud investors and commercial lenders, as opposed to money laundering.

Third, the United States believes Matic should receive an additional two-level downward variance to the advisory guideline range because of his early acceptance of responsibility.  This is a case where Matic immediately accepted responsibility and agreed to plead guilty.  He should receive credit for that.

Accordingly, the United States believes that the mitigating factors present here support a five-level downward variance for Christensen, and a six-level downward variance for Matic to their respective total offense levels.

**D.  Need to Protect the Public, Provide Adequate Deterrence, and Protect the Public**

The Court should also impose the recommended sentences to protect the public, promote respect for the law, provide for general and specific deterrence, and provide for just punishment. This is both Christensen's and Matic's first conviction and, thus, the lengthy sentences of imprisonment being recommended here will provide defendants with ample time to consider the consequences of his actions, promote a respect for the law, deter them from committing other crimes, and provide a just punishment.  It will also have the desired goal, as Victim D.P. stated, of "prevent[ing] others from having to endure this pain" that Victim D.P. has had to endure by deterring others to engage in similar misconduct.  (Victim D.P. Impact Statement.)

**E.  Need to Avoid Unwarranted Sentencing Disparities**

Section 3553(a)(6) requires a court to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty for similar conduct."

**United States' Sentencing Memorandum**                                             **Page 13**

**Christensen.**  According to Probation, the average length of imprisonment imposed was 99 months and the median length of imprisonment imposed was 87 months for 72 defendants whose primary guideline was § 2B1.1, with a total offense level of 33 and a criminal history category of I.  (RC PSR ¶ 211.)  While the United States' recommended 51 month term of imprisonment is below this average and median, there are unique mitigating factors present in this case, as discussed above, that the United States believes support the lower term of imprisonment recommended here.

**Matic.**  The average length of imprisonment imposed was 62 months and the median length of imprisonment imposed was 60 months for 183 defendants whose primary guideline was § 2B1.1, with a total offense level of 28 and a criminal history category of I.  (AM PSR ¶ 195.)  While the United States' recommended 24 month term of imprisonment is also below this average and median, the United States believes other considerations before the Court support that the recommended sentence would not create an unwarranted sentencing disparity.

Finally, the United States believes the different sentences being recommended for Christensen (51 months' imprisonment) and Matic (24 months' imprisonment) does not create an unwarranted sentencing disparity among defendants in this case because of their different roles in the fraudulent scheme.  It was Christensen who was primarily responsible for managing investor relations—including soliciting investors—business operations, and finances.  In contrast, Matic was primarily responsible for finding, acquiring, and managing real-estate properties.

**United States' Sentencing Memorandum**                                    **Page 14**

## VI.    CONCLUSION

The Court should sentence Christensen to (1) a term of imprisonment of 51 months, run concurrently on each count, (2) a 3-year period of supervised release, with the terms recommended by Probation, (3) a $100 special assessment on each count, and (4) no fine.

The Court should further sentence Matic to (1) a term of imprisonment of 24 months, run concurrently on each count, (2) a 3-year period of supervised release, with the terms recommended by Probation, (3) a $100 special assessment on each count, and (4) no fine.

Finally, the Court should set a restitution hearing for 90 days from the date of sentencing.

Dated: April 22, 2026.                              Respectfully submitted,

                                                    SCOTT E. BRADFORD
                                                    United States Attorney


                                                     */s/ Robert S. Trisotto*
                                                    ROBERT S. TRISOTTO
                                                    Assistant United States Attorney

**United States' Sentencing Memorandum**                              **Page 15**