Scott L. Mullins, OSB #142504
Mullins Law Office, LLC
1000 SW Broadway St., Suite 2300
Portland, Oregon 97205
Tel. 971-383-1315
Fax 503-525-4833
scott@slmullins.com

*Attorney for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 3:24-cr-00291-001-SI** |
| **Plaintiff,** | **DEFENDANT CHRISTENSEN'S SENTENCING MEMORANDUM** |
| **v.** | |
| **ROBERT D. CHRISTENSEN,** | |
| **Defendant.** | |

Defendant Robert D. Christensen, by counsel, submits this Sentencing Memorandum for his sentencing on April 30, 2026. A Confidential Supplement to the PSR with Exhibits A-K (sealed) will also be filed. Mr. Christensen incorporates his written objections to the draft PSR. For the reasons discussed in these submissions, Ms. Christensen requests a prison sentence of thirty-six (36) months. He also requests the Court to recommend placement at the Federal Prison Camp at

**Page 1  Defendant's Sentencing Memorandum**

Yankton, South Dakota. While FPC Sheridan is closer to his family, the medical care is not adequate given defendant's medical situation.[1] He recognizes the Court's recommendation is not binding on the Bureau of Prisons.

Mr. Christensen requests to self-surrender in late June 2026, so that he can attend previously scheduled physician appointments on June 4 and June 8. The appointments concern his recent stroke and other long standing medical conditions, discussed at Exhibit K.

The Court should set a restitution hearing approximately 90 days from April 30, 2026.

### 1.    Summary: Mr. Christensen Should Receive a 36-Month Prison Sentence.

Mr. Christensen cannot dispute that the victims' stories are heart breaking and true. He knows his decisions have wiped out victims' lifesavings and left families with debt from HELOCs he should never have recommended to them. There is no

---

[1] *DOJ OIG Releases an Inspection of the BOP's Federal Correctional Institution Sheridan* (May 22, 2024) available at https://oig.justice.gov/news/doj-oig-releases-inspection-bops-federal-correctional-institution-sheridan. (last visited April 15, 2026). "Specifically, we found that, due to staff vacancies in the Health Services Department, the institution had a backlog of 725 laboratory orders for blood draws or urine collection and 274 pending x-ray orders at the time of our inspection. These backlogs cause medical conditions to go undiagnosed and leave providers unable to appropriately treat their patients." In the past year, counsel (who is not a civil rights lawyer) has received uninvited correspondence (or calls) from Sheridan inmates seeking representation to investigate denied care, denied lab testing, lingering infections, and reduced prescriptions for insulation.

**Page 2  Defendant's Sentencing Memorandum**

way to fully reverse the consequences of what he caused. He understands that and, as discussed in the Confidential Supplement and at Exhibits A, E, he has worked to address the wrongs he caused.

The request for a 36-month prison sentence is based on four reasons. The reasons are fleshed out more in the Confidential Supplement.

*First*, the victims in this case have been hurt badly. Knowing that, Mr. Christensen has substantially cooperated with certain victims' lawyers in civil claims. In counsel's experience, defendants who cooperate with victims' lawyers have received sentences that are far more lenient than the sentence recommended by U.S. Probation in the PSR.

Considering the sentences of similar defendants is a key factor in determining a reasonable sentence pursuant to 18 U.S.C. § 3663(a)(6). Below is a brief summary of two cases in this District where the defendants' offense and their subsequent cooperation in civil claims is similar to Mr. Christensen's conduct (additional cases are discussed at the bottom of this brief):

- *United States v. Shayne Kniss*, Case No. 3:18-cr-00142-MO. Mr. Kniss was a Lake Oswego registered investment adviser, a fiduciary. He started a private fund called Iris Capital to invest in real estate. He lied to investors about how he'd use their money—e.g., he siphoned money to a separate (unrelated) marijuana business, he bought gobs of luxury clothes, engaged in extravagant travel, and flat out stole $529,486 dollars of client money. In total, his 47 victim investors lost $5,040,250 million, 5 or more victims suffered financial hardship, and as a fiduciary he received an abuse of trust

**Page 3  Defendant's Sentencing Memorandum**

enhancement. (*See* 3:18-cr-00142 at ECF 26). Despite these facts, Mr. Kniss was sentenced Kniss to 36-months, largely because the loss amount was difficult to determine (the various ways a fund manager receives compensation can be complicated). Thus, the Government agreed to a loss based on Mr. Kniss's personal gain, not the investment amount. An additional mitigating factor was that Mr. Kniss had a significant substance use disorder (Mr. Christensen has long suffered from diagnosed, mental health disorders but not substance abuse). On the civil side, Mr. Kniss, like Mr. Christensen, cooperated with victims' lawyers against the professionals involved, with securities regulators, and he also turned over Iris's real estate assets to a Receiver.

- *United States v. Robert Adams*, Case No. 6:23-cr-00211-MC. Mr. Adams started a forex currency trading platform from his home in Bandon, Oregon. He engaged in a massive general solicitation for investors. In doing so, he flat out lied to prospective investors about investment gains. (*See* 6:23-cr-00211 at ECF 34, "he also manipulated data to imply greater gains despite losses over a longer period of time.") In total, 155 investors invested $2,341,412.25 with Adams, including several who invested their entire life savings. Almost none of the victims were accredited investors. Adams also received a vulnerable victim enhancement. Mr. Adams, like Mr. Christensen, had serious health issues which likely mitigated the sentence imposed. Counsel took Mr. Adams' deposition after he agreed to waive his Fifth amendment privilege and turned over communications with prior securities counsel who'd advised him about the offering. Doing so assisted in victim recovery. Judge McShane imposed a sentence of 30 months.

The chief difference between these cases and Mr. Christensen's is that the §2B.1.1 loss amount is a bit higher in Mr. Christensen's case. But that one factor, like drug quantity, is not indicative of culpability alone.

As discussed in the Confidential Supplement, Mr. Christensen didn't begin the venture wanting to lie and cheat anyone, and he sought legal advice about how to conduct the business. (*See* Exhibits C, D). When cash, borrowing, and

**Page 4  Defendant's Sentencing Memorandum**

refinancings became tight (around Q1 2020), there was a fork in the road: shut down the investment or continue operations.

Mr. Christensen made the terrible decision to continue operating, and to avoid collapse, he lied to investors and lulled them into rolling their investments. He also obtained a (very) lender-friendly loan from a hard money lender, DLP, for $4,392,428. DLP took a first position across all properties (the properties, at the time of loan, had equity well above the loan principal) thereby eliminating any equity (or rights to equity) that would have existed if the investors had secured positions. When defendant's holding company (Innings 150, LLC) missed loan payments and filed for bankruptcy, DLP foreclosed across the portfolio. (PSR ¶ 118). DLP has since "sold 32 [properties] for a total of $3,765,950. The remaining five properties had a fair market value of approximately $2,525,960." *Id*.; *(see also*, *In re Innings 150, LLC*, Case No. 23-32634-pcm-7, Motion to Settle and Compromise and Order thereon dated July 16, 2024).

*Second*, Mr. Christensen, aged 56, is not in good mental or physical health. Any prison sentence is going to be hard on him and lower his life expectancy. (Exhibit K, medical and mental health records combined).[2] His comorbidities are also detailed at PSR at ¶174-182.

---

[2] Daza, S. *The Consequences of Incarceration for Mortality in the United States* (April 2020) available at https://pmc.ncbi.nlm.nih.gov/articles/PMC7710643/  (citing study that shows

**Page 5  Defendant's Sentencing Memorandum**

*Third*, since being contacted by the SEC in mid-2022, Mr. Christensen's whole life has changed. He's now separated from his wife. He's struggled to find work. And the close relationship he had with his two teenage children has been diminished and will certainly get worse when he's incarcerated.

*Fourth*, Mr. Christensen wasn't born privileged (far from it). He emancipated at age 16 after suffering physical abuse and neglect for years. (PSR ¶ 159-165; *see also* Exhibit F, interview report with sister).  In adulthood, he never acquired the education or skills to operate a portfolio of real estate located in the Midwest. But he wanted a better life for his family, and he believed he could help others obtain wealth too. (Exhibit J, defendant's letter). At bottom, Mr. Christensen didn't start the real estate venture to defraud anyone.  And he sought lots of business and legal advice from professionals about how to do things right. (Exhibit B, C). The advice turned out to be wrong.  (Exhibit B).

While bad advice doesn't provide a complete defense, it does explain how Mr. Christensen got in the difficult position of owing far more money that he ever should borrowed. Too often, defendants in promissory note frauds can't pay obligations when they come due and rather than admit defeat, they double down, take on more

---

"after adjusting for age, sex, and ethnicity, the mortality rate for recently released inmates is 3.5 times higher than the rate for the general population during an interval of 2 to 5 years since release.")

**Page 6  Defendant's Sentencing Memorandum**

debt, and put other people's money at extreme risk. Why more defendants don't opt to file bankruptcy at that juncture, or work out deals with existing creditors, or lawfully wind down affairs, is beyond the scope of this lawyer's knowledge.

Mr. Christensen doesn't need a long prison sentence to think about what he did or what he caused. He lives with the remorse of his conduct every single day. In his letter to the Court, he writes:

> Before this happened, I took pride in being a provider for my family and someone others could rely on. I also took pride in breaking the negative cycle of my childhood that was marked by abuse and neglect. I was working to build a stable and supportive life for my own family and create opportunities for others. I tried to create a home where my children felt safe coming to me, where they could talk openly and know they would be heard and supported. While these parts of my life do not excuse my actions, they make it even more difficult to accept how far I have strayed from the values I believed in. I am mortified that my actions have hurt others. It's something I have been severely struggling with everyday.

(Exhibit J).

### 2.    Sentencing Authority and Legal Argument

A lengthy discussion about federal sentencing law is not required. The Court is well versed in federal sentencing law. *First*, the Court must determine the proper advisory guideline calculation. *Gall v. United States*, 552 U.S. 38, 49 (2007). *Second*, the Court must consider the factors at 18 U.S.C. § 3353(a). On the § 3553(a)

**Page 7  Defendant's Sentencing Memorandum**

factors, Mr. Christensen urges the Court to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). The § 3553(a) factors are addressed in greater detail in the Confidential Supplement.

Regarding the advisory guideline calculation, the parties have agreed:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a) |
| Substantial Financial Hardship: | +4 | U.S.S.G. § 2B1.1(b)(2)(B) |
| More Than $1 Mill. From Fin. Inst.: | +2 | U.S.S.G. § 2B1.1(b)(17)(A) |
| Convicted Under 18 U.S.C. § 1957: | +1 | U.S.S.G. § 2S1.1(b)(2)(A) |

(ECF 39 at 5, § 7). On the loss amount, the Defendant agrees with the PSR writer that the loss is over $3.5 million but under $9.5 million. (PSR ¶ 138). There is no loss to DLP, the commercial lender, because the value of the collateral backing its loan was sufficient to cover its loss. *Id*.

In defendant's objections to the PSR, Mr. Christensen asked for a 16-level increase based on a proposed amendment to USSG § 2B1.1 but the Sentencing Commission has since declined to adopt the proposed amendment to loss table. Thus, the loss is 18.

If the Court agrees with the defendant's analysis of the advisory guidelines, then the starting point for sentencing is:

**Page 8  Defendant's Sentencing Memorandum**

| Base level | 7 |
|---|---|
| Loss | 18 |
| Financial institution loss more than $1 million | 2 |
| 5 or more victims' financial hardship | 4 |
| § 1957 | 1 |
| Offense level prior to adjustments | 32 |
| Acceptance | -3 |
| Variance (-4 for assisted victims) (-1 to offset § 1957) | -5 |
| Adjusted offense level | **24** |
| Advisory sentence | 51-63 (months) |

Mr. Christensen has no prior criminal history. However, due to the financial impact the offense had on victims, he does not qualify for a -2 adjustment for zero-point offender. USSG § 4C1.1(a)(6). The impact of the adjustment for USSG § 2B1.1(b)(2)(B) (victim hardship) is a 6-point swing, not a 4-point swing.

The Court should deny the PSR's enhancements for "sophisticated means" (PSR ¶ 140) and for "abuse of a position of trust" (*id.*, ¶ 144). Such enhancements do not apply for multiple reasons. Principally, *see* the defense's objections to the PSR, which are incorporated. (*See* PSR at pdf pages 52-56:58; *see also* Exhibit B, discussing the defendant's lack of sophistication and how he sought advice on compliance with the securities laws).

**Page 9  Defendant's Sentencing Memorandum**

Further, the factual basis in the Plea Agreement doesn't support such enhancements. (ECF 39 at 3-5). The defendant did not undertake a fiduciary duty of candor and loyalty to act in the best interest of investors. *Id*. The relationship was that of a debtor/creditor. Nor are there any admissions about concealing accounts/assets in secret companies or that the defendant engaged in complex structuring of transactions. *Id*. There's none of that. The companies' articles and filings with the Oregon Secretary of State tie back to the defendant.

Lastly, the Government is not moving on these two enhancements, leading to a dearth of evidence to support the enhancements. The "PSR is not evidence and not a legally sufficient basis for findings on contested issues of material fact … the court must either make findings by a preponderance of the evidence or disregard those facts. A district court abuses its discretion when it relies on unproven, objected-to conduct to support a sentence, because the district court must not consider contested facts without proof by a preponderance of the evidence." *United States v. Alan Sam*, 2026 U.S. App. LEXIS 7691, *6, 2026 WL 744150 (8th Cir. March 17, 2026) (internal quotations and citations omitted).

Finally, to follow up on the sentences for other defendants. In addition to the two cases discussed above, this Court imposed a 37-month sentence against Brian Rice in the Aequitas case. Mr. Rice put the Government to its paces in a 6-week

**Page 10  Defendant's Sentencing Memorandum**

fraud trial, he did not cooperate with the victims' lawyers, he was not prosecuted by the SEC, and he was a high-level, educated and accomplished manager of an investment company that had over 40 entities and thousands of investors. Jeff Walsh, a Bank of Oswego loan officer, had ill-intent from day 1. He ripped off a widow and proceeded to commit multiple frauds against his bank and lied on bank regulatory forms. This Court imposed a sentence of 30 months. https://www.justice.gov/usao-or/pr/former-bank-oswego-executive-receives-federal-prison-sentence-fraud   (last visited April 20, 2026).

A 36-month prison sentence is an appropriate sentence for this defendant. A longer prison sentence is not needed to provide specific deterrence. Given his SEC case, he can no longer be involved in capital raising and his criminal conviction will certainly bar him from ever working in mortgage lending again. Mr. Christensen has a very difficult post-prison life ahead: he has few friends, a family that has been split apart, no savings, and scant career options. He is defeated. When a guy is down it's often best to offer him a hand back up.

Dated: April 22, 2026.                    Respectfully submitted,

By: _____
       Scott L. Mullins, OSB #142504
Mullins Law Office, LLC
1000 SW Broadway St., Suite 2300
Portland, Oregon 97205
Tel.  971-383-1315

**Page 11  Defendant's Sentencing Memorandum**

Fax  503-525-4833
scott@slmullins.com

*Attorney for Defendant*

**Page 12  Defendant's Sentencing Memorandum**